UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE ROOFERS
LOCAL 149, et al.,

Plaintiffs,

CASE NO. 12-CV-10048

vs.

HON. GEORGE CARAM STEEH

J.D. CANDLER ROOFING CO.
and KEN KREICHELT,

Defendants.
_____________________________/

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMERY JUDGMENT [DOC. 20] AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DOC. 21]

Plaintiffs, Trustees of various employee benefit funds ("Funds"), have brought this action against the corporate and individual defendants for alleged unpaid employee benefit contributions, pursuant to various provisions of ERISA. At all relevant times, the corporate defendant has been bound by a collective bargaining agreement (CBA) with plaintiff Roofers Local 149. Plaintiffs' Funds' auditor completed a payroll audit of the corporate defendant on January 12, 2011, indicating a due and owing balance in unpaid employee benefit contributions of $141,069.90, liquidated damages of $14,106.99, and a payroll audit fee of $155.00. The individual defendant, Ken Kreichelt, is a 50% owner of defendant JD Candler Roofing Company. Mr. Kreichelt was the corporate president in 2010.

The issue in this case is whether certain Candler employees, who were designated as roofing safety monitors, actually performed roofers' work, as defined in the CBA, such that Candler owes fringe benefit contributions for the work done by these non-union workers. Plaintiffs' audit identified 17 safety monitors at issue. Discovery was conducted by the parties concerning the day, place and type of work actually performed by these employees. At the close of discovery, defendants filed a motion for partial summary judgment and plaintiffs filed a motion for summary judgment. These motions are presently before the court.

## FACTUAL BACKGROUND

While the Audit Report states that the period of the audit is for June 1, 2010 through September 30, 2010, it actually covers the nine month period from January 1 through September 30, 2010. Exhibit B to the Audit Report lists 17 Candler employees who were not members of Local 149 during that period, but whom the Funds claim were doing bargaining unit work during the audit period. All 17 employees were classified by Candler as safety monitors. Safety monitors are not to perform any work other than safety monitoring.

The complaint does not specify the amount of the claim, the time period covered by the complaint, or the identity of the employees on behalf of whom defendants allegedly failed to make payments. Discovery was conducted and the specifics of plaintiffs' claim were explored. In the complaint, plaintiffs demand an audit to cover the period following the Audit Report period ending September 30, 2010. On February 14, 2012, counsel for defendants wrote to counsel for plaintiffs to arrange for an audit to

cover any period after the existing audit. Plaintiffs' counsel did not pursue the opportunity to conduct another audit.

In order to have a claim for fringe benefit contributions based on hours worked by the safety monitors, plaintiffs must show that the monitors performed "roofers" work, as defined in the CBA. Discovery was conducted on this issue for all 17 safety monitors.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

### I. No Issues as to Nine Safety Monitors

The court first notes that the audit conducted by plaintiffs, which is based on payroll records, is inadequate to establish liability of defendant Candler. The court is left with affidavits and deposition testimony to determine whether there are issues of fact remaining for trial.

Plaintiffs have not provided any evidence to support their claims that the following safety monitors performed any bargaining unit work during the relevant time frame:

James Ballatore

Chris Baranowski

John Cyr

Joshua Friedel

Jeffrey Frost

Robert Katner

Michael Shea

Cristian Thomas

Jack Wallace

Defendants' motion for summary judgment as to these nine individuals is GRANTED.

## III. Evidence Regarding Remaining Eight Safety Monitors

### A. James Vancouwenberghe

James Vancouwenberghe's foreman was Bill Cronk, who testified that Vancouwenberghe would bring him his tools and remove gravel. (Cronk dep, p. 9) However, Cronk testified he never assigned Vancouwenberghe to do roofing work and Vancouwenberghe did not use tools of the roofers' trade. (Cronk dep, p. 11) There is an issue of fact whether Vancouwenberghe performed roofers' work.

### B. Steven Allred

Steve Allred's foreman was Mark Kaczmar who claims that Allred did roofing work, including tear offs and applying materials. (Kaczmar Affidavit, ¶ 11) Defendants do not seek summary judgment on Allred due to issues of fact, though they point out the lack of specificity as to the amount or percentage of roofing work he did.

C. Joseph Bojanowski

Defendants acknowledge that foreman Kaczmar testified that Bojanowski did roofing work and that Kaczmar was Bojanowski's foreman for 4 of the 1,036.5 hours claimed in the audit. There is no testimony as to what percentage of the 4 hours were spent doing roofer's work. In addition, foreman Marty Anderson testified that Bojanowski did 10% roofers' work. (Anderson dep. p. 10-11) The audit shows that Bojanowski worked 35 hours with Anderson during the audit period. Ten percent of those hours would be 3.5 hours. Bojanowski himself testified that he did not perform any roofing work while he was a safety monitor. (Bojanowski dep. p. 7) Summary judgment is granted in favor of defendants as to all but the 4 hours Bojanowski worked under Kaczmar and the 35 hours worked under Anderson.

D. Joshua Casada

The audit claims 246 hours for Joshua Casada. Only 5 of those hours were worked in Local 149's jurisdiction. Foreman John Basile asserted that Casada would take materials to the roof and remove roofing materials as well. (Casada Affidavit, ¶ 10) Summary judgment is granted to defendants on all but the 5 hours worked under Local 149's jurisdiction.

E. Nicholas D'Angelo

Both Nicholas D'Angelo, and his foreman and father Thomas D'Angelo, testified that Nicholas did roofing work 1% of the time. Defendants contend that 1% of the 48.5 hours claimed in the audit comes to about a half an hour. Summary judgment is denied as it relates to Nicholas D'Angelo to determine how much covered work under the CBA he performed.

F. Brandon French

Foreman Anderson testified that French did not perform any bargaining unit work. (Anderson dep. p. 16) Fellow safety monitor Jay Portwood attests that he saw French perform repairs and apply materials. (Portwood Affidavit, ¶ 7) Portwood does not specify when he saw French do roofer's work, or what percentage of his time was spent this way. Defendants acknowledge there are questions of fact with respect to all 600 hours claimed for French. Summary judgment is denied as it relates to work done by Brandon French.

G. Jay Portwood

Portwood submitted an affidavit that he spent 75-80% of his time doing roofing work. Defendants acknowledge that at most there is an issue of fact regarding 75% of 666 hours, or 499.5 hours. Partial summary judgment is granted to defendants as to hours worked by Portwood in excess of 499.5.

H. John Shea

Jay Portwood's affidavit states that he saw Shea "performing repairs and applying materials like cement and cotton to the roof." Portwood does not say when this occurred or how much time was involved. (Portwood Affidavit, ¶ 7) Summary judgment is denied as to whether Shea performed covered work.

IV. Remedy for Violating 29 USC 1059

Plaintiff Funds have a statutory basis under ERISA to require an employer to submit to an audit. Section 29 USC 1059 imposes an obligation on the employer to retain the records necessary for the preparation of such an audit. Plaintiffs cite to the Sixth Circuit case *Michigan Laborers Health Care Fund v. Grimaldi Concrete*, 30 F.3d

692, 697 (6th Cir. 1994), for the proposition that where the employer does not maintain the requisite records, the employer cannot be heard to complain that any damages calculation lacks the precision of measurement that would have been possible had he kept records in accordance with ERISA. Therefore, plaintiffs argue that they are entitled to all hours set forth in the audit in this case.

The court finds that plaintiffs are not entitled to a negative presumption under *Grimaldi*. In *Grimaldi*, the employees were laborers who were assigned to laborers' work. The safety monitors at issue here were not bargaining unit members and were not assigned to perform roofers' work. The scope of their assigned work was admittedly outside what the CBA defined as covered employment. When, and if, they occasionally performed bargaining unit work, the safety monitors were doing so in violation of their job description, in violation of express instructions, and under the supervision of Local 149 journeymen. Once defendants discovered that some safety workers were performing some bargaining unit work, they asked all safety monitors to sign statements acknowledging that they had been told not to do roofers' work. In addition, in this case Candler kept all records required under the CBA. The negative assumptions against the employer approved by the Sixth Circuit in *Grimaldi* are unwarranted in this case.

V. Individual Liability of Ken Kreichelt

Whether someone is an ERISA fiduciary is a legal conclusion to be determined by the trier of fact. *Ackers v. Palmers*, 71 F.3d 226, 230 (6th Cir. 1995). A person is considered to be a fiduciary with respect to a plan if he exercises any authority or control respecting the management or disposition of its assets. 29 USC 1002(21)(A). Contributions due under a CBA become assets of the Fund when they are due.

Individuals who have control over the company's finances while contributions are due are fiduciaries regarding plan assets. Plaintiffs' argument is that since contributions were due in this case when the safety monitors did roofing work, defendant Ken Kreichelt was a fiduciary because he had control over his company's finances and was obligated to pay the contributions.

Some courts take a closer look at the particular case in order to determine if the individual at the company knew he was a fiduciary under the trust documents as incorporated by the CBA. See *Iron Workers Local No. 25 Pension Fund v. Future Fence Co.*, No. 04-73114 (E.D. Mich. 10/12/2006) (Duggan). The recent Sixth Circuit case *Sheet Metal Local 98 Pension Fund v. AirTab Inc.*, 53 E.B.C. 2781, No. 09-3121 (6th Cir. May 29, 2012) is instructive. "This is a situation in which the plaintiff is attempting to transform an employer's nonpayment of a contribution into an exercise of control over a disposition of a plan's asset. We cannot find the [individual defendants] to be fiduciaries under such an argument. *Id*. (citing *Future Fence*).

It is premature to decide the issue of defendant Kreichelt's potential liability before any liability of Candler has been established.

CONCLUSION

For the reasons stated, defendants' motion for partial summary judgment is GRANTED IN PART and plaintiffs' motion for summary judgment is DENIED.

Dated: January 14, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 14, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk